Thank you. A minute to United States v. Freeman. There you are. Ms. Wood. Good morning, Your Honors. May it please the Court, my name is Lise Wood. I represent Appellant Walter Freeman, Miss Appeal. We have raised three arguments concerning his sentencing, and I would like to spend my time today discussing the first two, if it pleases the Court. I'll start with the argument concerning his criminal history. A court may not rely on its own underdeveloped assumptions in applying the 3553A factors of sentencing. I would submit that the District Court did that here in rejecting, in part, the argument that Mr. Freeman's criminal history was overstated. While the District Court imposed a slightly below-guideline sentence, it rejected the variance requested by Defense Counsel because of its belief that the number of times Mr. Freeman had been pulled over by law enforcement indicated that he was involved in more serious criminal activity that hadn't been accounted for by the guidelines. While Mr. Freeman did admit to engaging in small-scale drug dealing over the years, this was already accounted for in the guidelines as relevant conduct. There was no basis in the record to conclude that Mr. Freeman had engaged in other crimes. Well, I mean, the Court noted that basically the professional manner in which he was selling guns and drugs on the street suggested that the driving on a suspended license was not the only criminal activity. It was what he was convicted of. I mean, it's not – I don't believe it's improper for a court to determine that the nature of the convictions, which here, you know, were the driving offenses, didn't warrant a variance because his actions as a whole indicated – I mean, his own concessions that the criminal history accurately reflected his true criminal activity, that it was more serious than the driving would suggest. Judge, I think that the record – within the record, there was nothing to suggest that Mr. Freeman was pulled over because police suspected him of being involved in activity that was more serious than driving on a suspended license. The Court stated it was relying on its common sense in coming to that conclusion, but I would respectfully – But he had conceded that, you know, he was involved in selling guns to, you know, the gangs. He did judge. She had a lot of knowledge. But I would submit – not submit – but that conduct was clearly already accounted for in the guidelines, and thus to consider it as separate conduct for the purposes of criminal history would be improper. This Court has stated that evidence that – a district court must rely on reliable evidence in sentencing a defendant. Why don't you go to your next issue because your time is so slow. I understand, Judge. I'll address the district court's failure to address Mr. Freeman's crack powder disparity argument next. In failing to address Mr. Freeman's principal argument that the current 18-to-1 disparity between crack and powder cocaine is inappropriate, the Court committed procedural error. On at least three occasions since the Supreme Court decided Kimbrough and Spears, this Court has found error in a district court's failure to respond to arguments for a reduced crack-powder ratio. The government says that anyone acquainted with the facts of this case would have known why the Court rejected this argument. But that's simply not the case. Here it can't be assumed that the Court implicitly considered Mr. Freeman's argument for a reduced ratio merely because it imposed a below-guidelines sentence. The district court said absolutely nothing on this issue. In fact, it only mentioned crack one time throughout the entire sentence. But it's really clear from what the judge did say that drug quantity, which is what this argument goes to, is not the driving factor for this sentence. It's the gun running, that he was actively bartering guns for several years, 80 of them by a conservative estimate, and that's what she was most concerned about, not just his drug dealing, which if it were just solely a drug case, guns weren't involved at all, maybe your argument has some traction under the three cases that you've cited, despite the below-guidelines sentence. But this case is materially different from those because we have this gun peddling very prominently in the case, and the judge made it clear that that's what she was most concerned about. Judge, and I would point out that it's ironic, then, that it was actually the crack quantity that drove the sentencing guideline in this case, and the district court never addressed that. And even when a court provides convincing reasons for a sentencing decision,  is one can never be sure of what effect that argument had or would have had on the court's decision. Well, I think we can, based on this transcript, is my point. We can conclude that it's crystal clear it would not have had any effect, and so the judge passed over it, not because she didn't notice it, but that it wasn't going to make any difference here. She was going to give a below-guidelines sentence and did give a below-guidelines sentence. You were asking for 15 years. The government was asking for something close to 20. She came in at 16, largely because of the gun running, based on my qualitative reading of this transcript. So I think we can be clear that it was considered to be a throwaway argument as far as she was concerned in the specific context of this case. Respectfully, Judge, I disagree with that. I think the fact that the drug quantity played so prominently into the guideline calculation, the fact that the court addressed it in... Drug quantity is always going to play prominently into the guideline calculation. That's baked into the cake of guideline sentences in drug cases. So your argument is basically any time this argument is tossed out there, and it's tossed out there in every single case about the crack powder disparity, even after the Fair Sentencing Act reduced the ratio, that the judge has an obligation to explain it away, even if it doesn't make any difference at all based on what the judge does say about what is qualitatively important to her under 3553A. Otherwise, we're going to have to be requiring judges to address this every single time, adding yet again to the burdens on sentencing judges. Well, Judge, I don't think that the court needs to spend hours addressing it, but this court has held on... This just becomes form over substance, is my point. And we've already crossed that bridge far too many times from our perch up here at the Court of Appeals, as far as I'm concerned. And here, in this case, it was a categorical challenge. That's correct. It was not an as-applied challenge. I want you to save your time, your way into your rebuttal. Yes, and I will reserve the rest of my time for rebuttal. All right. Thank you. Ms. Bonamici, good morning. Good morning. Just made it. May it please the Court, Deborah Bonamici on behalf of the United States. Your Honors, the government's view is that there was no procedural error committed in this case for any of the reasons cited by the defendant. We agree wholeheartedly that to reverse this case based on a failure to discuss the crack powder disparity argument would be tantamount to saying that that was a special argument that, whenever it was made, had to be addressed, no matter what the context, no matter what the circumstances, and no matter what additional arguments the defendant raised that made the application of the term principle somewhat questionable, as was true here. I want you to help us with something. Sure. Wasn't the challenge in the crack cocaine ratio in United States v. Johnson a categorical challenge? And how is our remand in that case reconcilable, do you think, with the holding in Morris and Arbery and cases in that line? What I would say, and I'm not sure that I remember every detail of Johnson, so I don't want to act like I do. But what I would say is that what I glean from this Court's precedent here is that, in some cases, the Court is willing to say that reversal is required based on a failure to raise even a categorical challenge if the context of the rest of the sentencing suggests that that was, number one, a very critical argument made by the defendant, and, number two, that the crack guidelines were really what was at play in that case and really mattered, so that failure to consider the argument can be seen as really missing something important to the sentence. So you don't think that Rosario overruled those cases sub solitio? I would say that it's possible to read it that way. It would be favorable to the government to read it that way. It would be favorable to the concept of not having to appear again and again on cases that really, in our judgment, don't warrant it. But I think that it's also possible to reconcile the cases and say that none of the statements made by the Court are black-and-white rules that have to be applied precisely in every case. Well, can Johnson be reconciled with Morris on the grounds that a district court may be presumed to have adopted the status quo for categorical challenges, but for issues for which categorical challenges are regularly granted, such as the use of the 100-to-1 ratio at that time, that silence is insufficient to infer that the matter was considered? Well, two things. As to Morris, Morris was a little bit of a special case because Morris involved drugs that were mostly counterfeit, and that was an important feature of the Court's determination. That was something that distinguished it also as an argument that was tailored to the defendant's particular circumstances. But the history of this issue in the Court, of course, should be considered in determining whether we're going to interpret silence as essentially ignorance or just merely following the guidelines without thought. I mean, initially there was a debate as to whether that was an issue that the district courts could even consider. Kimbrough made it clear that was something that the district court was empowered to consider, that the district court had the right and the power to consider policy disagreements with the guidelines, and this was a very prominent one, of course. We are far beyond that point. There is no reason to assume that any district court today is making a determination under the CRAC guidelines that's based on a belief that the guidelines must be blindly followed. That's not possible today. And the Court's gradual acceptance or gradual determination that the CRAC powder disparity is not, I think what Rosario says or can be understood to say is that it's not a special argument that has to be considered every day. And considering it such a special argument really overreads the Court's prior precedent, and it certainly does in the context of today's sentencing when this point has been hammered home multiple times, and certainly if a court has a policy disagreement with the guidelines regarding CRAC, the Court will exercise its discretion with that policy disagreement in mind. And it may be that the district court did that here. It's unclear. What is important in this case and was important to the Court very obviously was the gun running, just as Judge Seitz said, and that makes it clear to anyone who reads the transcript or was present at the sentencing, makes it very clear, abundantly clear, that the CRAC powder disparity was just not an argument that was even in play. It had no bearing on the sentence. And the fact that it drove the sentencing guideline is really not the important point. The important point is how do we understand the district court's judgment and how does this court have confidence that the district court considered the arguments that were presented and properly exercised her discretion in determining the sentence? That's the important question. With your remaining time, I wonder if you could address the first argument that counsel for the defendant addressed, and that is with respect to how these traffic offenses ought to be considered. What's the government's characterization of that whole situation? Well, of course the government recognizes and agrees that it would be improper for the district court to base a determination of sentencing on speculation about crimes the defendant may or may not have convicted, crimes that he was never charged with or convicted of. But in the context of this particular case, the government thinks that the fairest reading of the court's comments was actually an effort to reconcile the two images of the defendant that were being presented by the parties. The defendant was stressing that his, and had requested a reduction based on the fact that his criminal history understated, his criminal history category understated his actual prior criminal conduct, which was really flatly inconsistent and refuted by the defendant's own admissions that he had been dealing crack cocaine for five years continuously and had engaged in multiple, multiple transactions involving both crack cocaine and guns. And these were all of these crimes that he admitted having committed these numerous repeated crimes were not crimes that he was charged with, were not crimes that he was convicted of, but they were present and the defendant had admitted it. In that context, it seems to me that the court's understanding of what was going on with respect to the- And I believe counsel's argument is that yes, but those other crimes have already been counted as relevant conduct. That's true, but- And therefore should not, and should not justify the criminal history points. Well, that's true, but the criminal history points were justified under the guidelines. The question was whether a departure was appropriate, right? I mean, the criminal history points were counted based on the actual nature of the crime. So that's the nub of it really. It's whether a departure was indicated. Exactly. That's what the court, the defendant acknowledged this, that's what the court was considering was whether a reduction or a variance from the guidelines was appropriate based on the criminal history category's overstatement of the defendant's criminal history. She seemed, the judge seemed to be saying, look, you were driving around, you got a couple of parking tickets while doing it, but you were driving around distributing drugs. So you were, you know, you got the parking tickets in the course of your criminal conduct. Is that a reasonable inference for the judge to draw or is that speculation? The government would not agree that that was a reasonable inference to draw directly from the evidence in the sense that, I mean, wait, let me be clear. It would not be appropriate to speculate that in each case in which the defendant was convicted of driving without a license, he was actually pulled over while in the process of committing a drug crime. The government does not agree that that is necessarily a reasonable inference. What the court was saying, I think, wasn't that specific. And, of course, this is a very small part of the court's discussion of this overall issue of whether a variance was warranted. But what I think the court was saying is, look, don't tell me that all you ever did before this was drive without a license. Please don't. That argument I reject because what I already know about the defendant is something very, very different. And whatever reason they had for pulling you over, maybe it was when you were distributing drugs, maybe it wasn't, whatever their reasons, you are smart enough to have made the decision every time you committed one of those offenses to do it. You knew the consequences. You did it. You did it repeatedly. And it's just not accurate to say that your criminal history category of five overstates your actual history. Thank you. For these reasons, Your Honors, we would request that the judgment be affirmed. Thank you. Ms. Wood. I'll just briefly address the last topic. I think the court is right that the district court in this case, when she spoke about the numerous traffic stops that Mr. Freeman had had in his past, was absolutely referring or suggesting that he was pulled over because he was distributing drugs. And the big problem with that is that, yes, he had admitted to that, and, yes, it was encapsulated as relevant conduct in this case, and, therefore, it went into his sentencing guidelines. The record is absolutely bare that he was engaged in other criminal conduct that wasn't accounted for by the guidelines. And under 4A1.1 Note 2, to consider that conduct in denying our request for a variance, I believe is improper. Turning to the crack powder disparity argument, I'll address the Rosales case briefly as well. That case does not purport to overrule Johnson and Arbery, which involve purely categorical challenges to the crack powder disparity guideline argument. And I would note that if Rosales is read to apply to crack powder disparity arguments, that the only possible argument that I could think of, and I readily admit that there are greater legal minds than mine, is the kind of argument that you have in the Morris case, where it's a counterfeit substance. The only argument that can be made is going to be tailored to the crack in the specific case. And if we're talking about meritorious arguments, I would submit that the categorical argument, which actually addresses some of a defendant's unique circumstances, a defendant's race, a defendant's income, where a defendant is on sort of a drug conspiracy hierarchy, that kind of an argument is more meritorious, in my opinion, than an argument dealing solely with the crack distributed in that case. So for all the reasons I discussed today and the reasons discussed in my brief, I would respectfully ask the Court of Versa No Man for resentencing. Thank you, Ms. Wood, and you are CJA. I am. CJA. Thank you very much. You have the thanks of the Court. And the government always has the thanks of the Court because...